UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEPHANIE LYNN W.,[1]<br><br>　　Plaintiff,<br><br>　v.<br><br>MICHELLE KING[2], Acting Commissioner of Social Security Administration,<br><br>　　Defendant. | Case No. 1:24-CV-00036-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff filed a Complaint for judicial review of the Commissioner's denial of her application for social security benefits. (Dkt. 1). The Court has reviewed the Complaint, the parties' memoranda, and the administrative record (AR), and for the reasons that

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Michelle King is substituted for Caroline Colvin pursuant to Federal Rule of Civil Procedure 25(d). King became the Acting Commissioner of Social Security in January 20, 2025. No further action need be taken to continue this matter by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

follow, will remand the Commissioner's decision for further proceedings.

## BACKGROUND

On June 30, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. The application alleges disability beginning on May 1, 2019. The application was denied initially and on reconsideration.

A hearing was conducted on December 8, 2022, before Administrative Law Judge (ALJ) David Willis who issued an unfavorable decision on February 8, 2023. (AR 20-32). The Appeals Council denied review, making the ALJ's decision final. On January 22, 2024, Plaintiff timely filed a Complaint seeking judicial review of the ALJ's decision. (Dkt. 1). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time of the alleged onset date, Plaintiff was thirty-two years of age. Plaintiff completed eleventh grade and has prior relevant work experience as a telephone service representative and a salesclerk. (AR 29-30, 41). Plaintiff claims she is unable to work due to physical impairments, including: diabetes type 1, gastropareses, endometriosis, cam hip impingement, cardiomyopathy, osteopenia, postural orthostatic tachycardia syndrome (POTS), coccydynia, and Ehlers-Danlos Syndrome.[3] (AR 42).

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason

---

[3] Ehlers-Danlos syndrome is a genetic condition that makes your body's connective tissue weaker and less supportive than it should be. It can cause many different symptoms. https://www.my.clevelandclinic.org/health/diseases/17813-ehlers-danlos-syndrome (last visited 12/10/2024).

**MEMORANDUM DECISION AND ORDER - 2**

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2019, the alleged onset date. (AR 23). At step two, the ALJ found Plaintiff had the following medically determinable, severe impairments: Ehlers-Danlos syndrome, congestive heart failure, and type I diabetes. (AR 23). The ALJ found also at step two, that Plaintiff's migraine headaches and mental health symptoms were not medically determinable impairments; and Plaintiff's status post left wrist fracture, tailbone injury, hypertension, and diabetic gastroparesis were non-severe impairments. (AR 23-24).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meet or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526. (AR 24-25). The ALJ next found Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

**MEMORANDUM DECISION AND ORDER - 3**

> can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for six hours in an eight-hour workday. She can sit for sit [sic] hours in an eight-hour workday. The claimant can occasionally reach overhead with the bilateral upper extremities. She can frequently reach laterally and forward with the bilateral upper extremities. She can occasionally push and pull with the bilateral upper extremities. The claimant can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can frequently stoop and kneel. She can occasionally crouch. She can never crawl. She must avoid all exposure to unprotected heights, moving mechanical parts, extreme cold, and vibrations. She must avoid operating a motor vehicle as part of her job duties.

(AR 25-26). Relying upon testimony from the vocational expert, the ALJ concluded at step four that Plaintiff could perform her past relevant work. (AR 30). Alternatively, the ALJ concluded there were other jobs that exist in significant numbers in the national economy that Plaintiff can perform given her age, education, work experience, and RFC. (AR 30-31). Thus, the ALJ determined Plaintiff was not disabled. (AR 31).

## ISSUES FOR REVIEW

1. Whether the ALJ properly evaluated the medical opinion evidence?

2. Whether the ALJ properly evaluated Plaintiff's subjective symptom statements?

3. Whether the ALJ properly evaluated the lay witness statements?

4. Whether the RFC is supported by substantial evidence?

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires more than a mere scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009). If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

On review, Plaintiff argues the ALJ failed to consider all relevant evidence, symptoms, and limitations reasonably attributed to her medically determinable

**MEMORANDUM DECISION AND ORDER - 5**

impairments when fashioning the RFC.[4] (Dkt. 15 at 8-13). Specifically, Plaintiff's pain with sitting, time off task, breaks, absenteeism, and difficulty with handling and grasping. (Dkt. 26). Defendant maintains the RFC assessment is supported by substantial evidence, including the opinions of the state agency medical consultants. (Dkt. 23).

1.     **Legal Standard**

An RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). When assessing a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical records, medical source statements, and symptom testimony, of a claimant's medically determinable impairments, whether severe or not, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted); *see also Carmickle*, 533 F.3d at 1164; 20 C.F.R. § 404.1545(a)(1)-(3), (e). The ALJ is not obligated to discuss every piece of evidence when interpreting the evidence and developing the record, or discuss every word of a medical opinion or include limitations not assessed by a medical source. *Edwin C. v. Kijakazi*, No. 5:20-cv-2478-MAR, 2021

---

[4] Having found remand is warranted on this issue, the Court will not address Plaintiff's other assignments of error. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008).

**MEMORANDUM DECISION AND ORDER - 6**

WL 7286046, at * 6 (C.D. Cal. Nov. 19, 2021) (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). "However, the ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected." *Id.* (citing *Robbins*, 466 F.3d at 883; *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)).

The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Rounds*, 807 F.3d at 1006. In addition to medical evidence, the ALJ must consider descriptions and observations of the claimant's limitations, including limitations resulting from pain. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (cleaned up); 20 C.F.R. § 404.1545(e), §404.1459. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The RFC finding must be supported by substantial evidence in the record and the ALJ must explain their reasoning underlying the RFC. 42 U.S.C. § 405; SSR 96-8p. To that end, the RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence. SSR 96-8p. The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

**2.      Analysis**

MEMORANDUM DECISION AND ORDER - 7

Here, the ALJ concluded Plaintiff was capable of performing light work, except for certain limitations with lifting, carrying, pushing, pulling, reaching, and some postural and environmental restrictions. (AR 25-26). The ALJ determined Plaintiff could stand and/or walk for six hours in an eight-hour workday, and sit for six hours.[5]

### A. Sitting

Plaintiff argues the ALJ erred in failing to consider her sacrum and coccyx pain relevant to her Ehlers-Danlos syndrome, and by not including any sit-stand options or time off-task in the RFC. (Dkt. 15 at 9). Defendant contends that the ALJ did consider Plaintiff's sacrum and coccyx pain, citing the ALJ's step two finding. (Dkt. 23 at 13) (citing AR 24).

At step two the ALJ found Plaintiff's Ehlers-Danlos syndrome was a severe medical impairment. (AR 23). The ALJ further concluded that Plaintiff's coccyx pain was non-severe, stating her "tailbone injury in early 2022 is not supported by the objective medical evidence" based on imaging from February 8, 2022 finding no abnormalities of her sacrum, coccyx, or bilateral hips. (AR 24) (citing AR 2229).

However, the ALJ's step two finding does not absolve the ALJ from considering and addressing evidence in the record that Plaintiff had pain and limitations with sitting and the records stating her tailbone pain was possibly attributable to her severe medical

---

[5] The ALJ decision contains a typographical error, stating: "She can sit for sit [sic] hours in an eight-hour workday." (AR 25). A rational reading of the decision is that the ALJ determined Plaintiff could sit for six hours in a workday. (Dkt. 15, 23).

MEMORANDUM DECISION AND ORDER - 8

impairment of Ehlers-Danlos syndrome when determining the RFC. (AR 24); *see e.g., Suzi Marie H. v. O'Malley*, 2024 WL 965233, at *12 (S.D. Cal. March 5, 2024).[6] The ALJ must consider the limiting effects of all of Plaintiff's impairments, whether severe or not, when fashioning the RFC. *Carmickle*, 533 F.3d at 1164; *Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1545(a)(1)-(3), and (e); SSR 96-8p. The ALJ was therefore required to consider Plaintiff's complaints of pain with sitting, even if non-severe, and the records attributing tailbone pain to Ehlers-Danlos syndrome, which the ALJ found to be a severe medically determinable impairment. The ALJ did not do so here. *Id.*

In determining the RFC, the ALJ concluded, without explanation, that Plaintiff could sit for six hours but did not discuss Plaintiff's complaints of tailbone pain and difficulties with sitting despite having found her Ehlers-Danlos syndrome was a severe medical impairment and despite the fact that non-severe impairments must be considered in assessing the RFC. (AR 25-26). In doing so, the ALJ erred.

Plaintiff's tailbone pain and treatment of the same are documented repeatedly in the record. Indeed, the February 8, 2022 medical record cited by the ALJ at step two reported that Plaintiff's tailbone pain was "longstanding" and that she had "some point tenderness in a defect at the right lower coccyx concerning for avulsion fracture," which

---

[6] Plaintiff has not alleged error at step two and, therefore, has waived any argument in that regard. *McKay v. Ingleson*, 558 F.3d 888, 891 n. 5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived"); *Carmickle*, 533 F.3d at 1161 n. 2. In any event, the RFC should be the same regardless of whether certain impairments are considered severe or not at step two. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

**MEMORANDUM DECISION AND ORDER - 9**

is what prompted the provider to order the x-ray. (AR 2243). While the x-ray was negative for a fracture, the longitudinal record reflects that Plaintiff continued to have tailbone pain that limited her ability to sit. Notably, Plaintiff was seen on April 11, 2022 for coccydynia/tailbone pain. (AR 2202-2226). The medical record from that visit reported that Plaintiff's coccygeal pain was possibly complicated with Ehlers-Danlos syndrome and hypermobility, despite the earlier imaging findings being negative for displaced fracture, malalignment, or joint spacing. (AR 2050, 2208). Plaintiff was referred for an orthopedic consult and a DEXA bone scan. (AR 2195, 2210, 2223). On May 16, 2022, Plaintiff received a sacrococcygeal joint injection for coccydynia pain. (AR 2166-2194). The injection provided immediate relief, but Plaintiff's pain returned the day after the procedure. (AR 2193). In September and October 2022, Plaintiff was seen by neurologists for tailbone pain, with her worst symptoms in her tailbone which she reported were "aching and stabbing," made worse by sitting, and had not improved with physical therapy but benefited somewhat from OMM[7] treatments. (AR 2050-2096, 2097, 2099-2100). On October 10, 2022, Plaintiff received a ganglion impar block injection which was not helpful to resolve her tailbone pain. (AR 2071-72, 2097). A November 1, 2022 medical record by Plaintiff's treatment provider, David McDermott, PA-C, noted Plaintiff has "chronic pain with coccydynia, dorsalgia and concerns over Ehlers-Danlos syndrome as well that worsened the above." (AR 2115). McDermott's December 4, 2022

---

[7] OMM is an abbreviation for osteopathic manipulative medicine, which is a technique performed by a osteopathic physician (DO) to treat muscle and joint conditions and injuries. *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC9143587/ (last visited 1/7/2025).

**MEMORANDUM DECISION AND ORDER - 10**

opinion similarly found that Plaintiff had chronic coccydynia pain due to Ehlers-Danlos syndrome which limited her ability to sit for more than one hour. (AR 2611-12).

Thus, several medical records reported Plaintiff had tailbone pain and difficulty sitting, possibly related to her Ehlers-Danlos syndrome. Namely, medical records reporting that Plaintiff had continuing tailbone pain and that her Ehlers-Danlos syndrome potentially caused or worsened her tailbone pain, all of which impacted her ability to sit for prolonged periods of time. The ALJ did not address these records and the written decision does not otherwise reflect that the ALJ considered Plaintiff's tailbone pain and difficulties with sitting or the impact of her severe impairment Ehlers-Danlos syndrome on her ability to sit.

Further, in his consideration of the medical opinion evidence and Plaintiff's symptom statements, the ALJ did not discuss sitting. While the ALJ discredited Plaintiff's statements about some of her symptoms, the ALJ did not address her complaints of tailbone pain and difficulty sitting aside from merely listing sitting as one of Plaintiff's contentions of pain. Similarly, the ALJ's evaluation of McDermott's opinion is absent any discussion of sitting or tailbone pain despite the fact that the opinion reports chronic pain to Plaintiff's coccydynia and inability to sit for more than one hour at a time and in a workday due to Ehlers-Danlos syndrome. (AR 2611-12). Nor does the ALJ mention sitting when evaluating the prior administrative findings, which the ALJ found persuasive and presumably adopted given they too concluded Plaintiff could sit for six hours. (AR 28). Even if the ALJ's evaluation of the medical opinion evidence

**MEMORANDUM DECISION AND ORDER - 11**

and Plaintiff's symptom statements was free of legal error, which Plaintiff contests, the medical records discussed above contain objective medical findings of Plaintiff's limitations with sitting that the ALJ failed to address.

Further, the ALJ's discussion of other objective medical records reporting normal strength, intact sensation of the bilateral extremities, normal unassisted gait, and improvements with treatment of some of Plaintiff's conditions does not include any discussion of Plaintiff's reported difficulties with sitting or tailbone pain. Nor does the ALJ's treatment of those records reveal whether the ALJ considered Plaintiff's complaints of pain with sitting. For example, absent any explanation it is unknown whether the ALJ concluded that Plaintiff could sit for six hours based on the objective medical findings of normal bilateral strength, normal gait, and intact sensation. Nor does the written decision offer any discussion or explanation from which the Court can discern the ALJ's reasoning regarding how these objective records relate to Plaintiff's ability to sit. Indeed, there is no explanation for the six hour sitting determination in the RFC.

While the regulations "do not require the ALJ to include limitations in the RFC if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the claimant's ability to work," ALJs must still show their work and explain their rationale. *Felicia N. v. Kijakazi*, 2022 WL 952176, at *10 (C.D. Cal. March 29, 2022) (quoting *Koshak v. Berryhill*, 2018 WL 4519936, at *8 (C.D. Cal. Sept. 19, 2018) (citations omitted) (The ALJ must review record and specify reasons supported by substantial evidence for not including non-severe impairment in the RFC); SSR 96-8p.

**MEMORANDUM DECISION AND ORDER - 12**

Here, the ALJ offered no meaningful discussion of Plaintiff's limitations with sitting, other than the brief step two finding regarding a "tailbone injury," and passing references to sitting when evaluating Plaintiff's symptom statements. The Court is therefore unable to determine whether the ALJ considered Plaintiff's sitting limitations and related records when assigning the RFC, and whether the ALJ's decision is supported by substantial evidence. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). To conclude otherwise would require that the Court improperly infer or guess at the ALJ's reasoning. The ALJ must consider the records in the first instance and provide some explanation of his findings. *Brown-Hunter*, 806 F.3d at 496. The ALJ here erred in failing to do so.

The ALJ's error was harmful. *Rounds*, 807 F.3d at 1007 (ALJ error is harmless if it is "inconsequential to the ultimate nondisability determination."). The Vocational Expert testified that if an individual is only able to stand and walk for a total of two hours and sit for less than one hour in a workday, that individual would not be able to sustain full-time, competitive work. (AR 67). McDermott opined that Plaintiff could not sit for more than one hour at a time or in a workday. (AR 2611-12). The ALJ's evaluation of McDermott's opinion did not address the sitting limitation or her complaints of tailbone pain relevant to her Ehlers-Danlos syndrome. (AR 27-29). Thus, it is unknown whether the ALJ considered McDermott's sitting opinion or how the ALJ would view Plaintiff's complaints of pain with sitting and the impact of her severe impairment of Ehlers-Danlos

**MEMORANDUM DECISION AND ORDER - 13**

syndrome on her ability to sit as reflected in the record. As a result, the Court cannot conclude that the ALJ's decision was supported by substantial evidence. Had the ALJ found Plaintiff unable to sit for less than an hour in a workday after fully considering the medical evidence, Plaintiff would be disabled based on the Vocational Expert's testimony. For these reasons, the Court finds the error found here was harmful.

### B.  Absenteeism and Time off Task

With regard to absenteeism, "[c]ourts have observed that '[a]bsenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded.'" *N.N. v. Kijakazi*, 2021 WL 4481782, at *7 (N.D. Cal. Sept. 30, 2021) (quoting *Scott G. v. Comm'r, Soc. Sec.*, 2021 WL 958452, at *4 (W.D.N.Y. Mar. 15, 2021)). However, the frequency of medical appointments, alone, does not establish a claimant is unable to perform work on a regular and continuing basis. *Alicia M. v. Comm'r, Soc. Sec.*, 2023 WL 2744135, at *6 (D. Idaho March 31, 2023) (discussing *Goodman v. Berryhill*, 2017 WL 4265685, at *2–3 (W.D. Wash. Sept. 25, 2017, aff'd, 741 F. App'x 530 (9th Cir. 2018))). Work "on a regular and continuous basis ... means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 at *1, 2 (July 2, 1996); 20 C.F.R. § 404.1545(b) & (c) (assessing physical and mental limitations to "determine your residual functional capacity for work activity on a regular and continuing basis").

Here, treatment records from medical providers reflect that Plaintiff had multiple medical appointments and hospitalizations each month. (AR 27). Plaintiff testified that

her work history includes several short duration jobs because she lost jobs due to absenteeism. (AR 56). The ALJ's hypothetical during the hearing did not include absences or time off task. However, the ALJ inquired of the Vocational Expert concerning absences and time off task. (AR 61-62). For absenteeism, the Vocational Expert testified that employers would tolerate absences of up to one day per month, but two days every month would be considered excessive and no jobs are available. (AR 62). For time off task, the Vocational Expert testified that being off task for ten percent of the workday would eliminate both of Plaintiff's past relevant work in skilled and semi-skilled jobs. (AR 62-63). For her prior sedentary, semi-skilled work as a telephone service representative, the Vocational Expert testified that employers typically tolerate up to five percent of time off task. (AR 64). However, time off task of ten percent would be tolerated for an unskilled job, but fifteen percent of time off task would not be tolerated for any job. (AR 63-64). The Vocational Expert concluded that Plaintiff could perform her past relevant work as a telephone service representative – sedentary and semi-skilled – where she can be off task up to five percent and absent one day per month, but that work would be eliminated if time off task were ten percent or absences were two or more days per month. (AR 64-65). Alternatively, the Vocational Expert identified three unskilled sedentary jobs that a person with Plaintiff's RFC could perform with up to ten percent of time off task and one day absent per month, but not two absences in a month: copy examiner, touch up inspector, and final assembler. (AR 31, 65). The Vocational Expert testified that consistent absences of one or two days per month would eliminate

**MEMORANDUM DECISION AND ORDER - 15**

competitive employment. (AR 62-65).

There is evidence suggesting Plaintiff could be absent from work for treatment of her impairments more than two days per month and off task due to her impairments more than tolerable for full time employment. Still, the ALJ did not address absenteeism or time of task in the written decision. While both were discussed during the hearing, the written decision makes no mention of either absenteeism or time off task. During the hearing, the ALJ explained the technical reason that Plaintiff's shorter duration jobs are not considered at step four as past relevant work, and then stated that he would consider her reason for having lost the short-term jobs. (AR 56-57). Yet, there is no mention of absenteeism or time off task in the decision. (AR 20-32).

Without any discussion of these considerations in the decision, it is unknown whether the ALJ made any determination concerning absenteeism or time off task. On remand, the ALJ should evaluate whether absenteeism or time off task impact the disability determination.

3.   **Conclusion**

The ALJ erred in failing to address all of Plaintiff's limitations when assessing the RFC and by failing to explain his reasoning. As a result, the Court is unable to determine whether the RFC is supported by substantial evidence. Because the error found herein was harmful, the Court will reverse the decision of the Commissioner.

Generally, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or

**MEMORANDUM DECISION AND ORDER - 16**

explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). The decision whether to remand for further proceedings is within this Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). In cases where further administrative review could remedy the Commissioner's errors, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Upon a careful review, the Court finds remand for further proceedings is appropriate here because further administrative review could remedy the ALJ's errors. Moreover, it is unclear whether Plaintiff is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (Remand is appropriate "when the record as a whole creates serious doubts as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *Brown-Hunter*, 806 F.3d at 496; *see also Bunnell*, 336 F.3d at 1115-16.[8]

For these reasons, the Court will reverse and remand the ALJ's decision for further

---

[8] This is not to say that the disability determination will or should be different in this case, only that the Court cannot determine that the outcome would remain the same upon a correct evaluation of the record.

**MEMORANDUM DECISION AND ORDER - 17**

administrative proceedings. The ALJ should reassess the entire record in making the disability determination on remand. The parties may freely take up any issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) The Complaint for Judicial Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: February 13, 2025

_____
Honorable Debora K. Grasham
United States Magistrate Judge